No. 12,928.

RACELAND BANK AND TRUST COMPANY *v.* PUEBLO SAVINGS AND TRUST COMPANY.

(23 P. [2d] 114)

Decided May 29, 1933. Rehearing denied June 19, 1933.

Mr. WILLIAM T. BURRIS, for plaintiff in error.

Messrs. ADAMS & GAST, for defendant in error.

*In Department.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE Raceland Bank and Trust Company sued the Pueblo Savings and Trust Company for $1,147.50 on a guaranty. The trial court directed a verdict for the defendant and dismissed the case.

On June 3, 1929, the King Fruit Company, of Pueblo, telegraphed the LaFourche Produce Company of Raceland, Louisiana, a dealer in potatoes: "Wire lowest

price car well graded Usone Triumphs rolling on prompt shipment." The produce company answered: "Answering best Triumphs graded inch five eighths larger even weight nubags two sixty cash unsold." The fruit company accepted the offer in these words: "Message received ship minimum car best Triumphs as quoted route car Colorado Southern." At the fruit company's request, the defendant wired the plaintiff on June 4: "We guarantee payment car best Triumphs from LaFourche Produce Company to King Fruit Company." The plaintiff answered: "Referring to your telegram of 4th guarantee not satisfactory unable to know if Triumphs are best don't know anything about grades." The defendant wired back: "We guarantee payment car Triumphs as per telegram today LaFourche Produce Company to King Fruit Company." The plaintiff answered: "Referring to your telegram of today, we are not qualified to pass on or have no means to judge grades or quality of produce stop We have fixed rules to handle items of this character only provided we are not involved in specifications of grades, conditions or quality stop If you guarantee payment of draft we will handle upon presentation of draft with bill of lading attached covering one carload of Triumphs potatoes shipped to King Fruit Company from LaFourche Produce Company advise." In response to this, the defendant, on June 4, wired the plaintiff: "We guarantee payment draft car Triumphs Pacific number 6449 LaFourche Produce Company to King Fruit Company." Four days later a draft for $1,147.50 was drawn by the produce company on the fruit company and deposited with the plaintiff to the credit of the produce company. On the same day the potatoes were shipped. The quantity ordered was a minimum car, that is to say 24,000 pounds. The quantity shipped was 42,500 pounds, nearly twice the quantity ordered. Upon their arrival, the potatoes were inspected by the freight agent and his assistant, and also by Dr. Carroll, inspector of the Pueblo department of

health, and were found to be in a bad state of decomposition and wholly unfit for human consumption at the time of arrival. Pursuant to the order of the city health department, the entire shipment of potatoes was thrown upon the city dump. The fruit company refused to pay the draft.

It is not contended that, in the circumstances, the fruit company was under any obligation to pay the draft or otherwise pay for the potatoes, but it is contended by counsel for the plaintiff that the defendant, by virtue of its guaranty, is liable to the plaintiff for the amount of the draft. With that contention we cannot agree. True, when the defendant specified "best Triumphs," the plaintiff refused to accept the guaranty, but it did accept the guaranty of payment of a draft for a car of Triumphs to be shipped by the produce company to the fruit company. It knew that the potatoes were to be used for human consumption. Admitting for the present purpose that the guaranty did not cast upon the plaintiff the duty of seeing to it that the potatoes were Triumphs of the best grade and quality, the fair construction of the guaranty is that the defendant guaranteed the payment of a draft drawn for the purchase price of potatoes fit for human consumption. If, instead of shipping potatoes, the produce company had shipped some other commodity, no one would contend that the defendant would be liable for the payment of the draft. Or, to assume a situation somewhat closer to the present case, if the potatoes shipped by the produce company were decayed potatoes obtained by it from the Raceland city dump, where they had been deposited under order of the health officer after being condemned as unfit for human consumption, would the defendant be liable on its guaranty? We think not. The same result should follow in the present case. The guaranty does not require the defendant to pay the draft drawn for the purchase price of something that, for all practical purposes, was

nonexistent. The transaction does not come within the terms of the guaranty.

The judgment is right. It is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE MOORE concur.